1

**EXHIBIT TABLE OF CONTENTS**

2

3  EXHIBIT A ................................................................................................. 8

4  EXHIBIT B ................................................................................................. 27

5  EXHIBIT C ................................................................................................. 38

6  EXHIBIT D ................................................................................................. 55

7  EXHIBIT E ................................................................................................. 56

8  EXHIBIT F ................................................................................................. 57

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anglin Flewelling Rasmussen Campbell & Trytten LLP

EXHIBIT A

1   **Kettner Law Corporation**
    Marc Applbaum (SBN 222511)
2   2150 W Washington Street, Suite 104
    San Diego, CA 92110
3   Tel: (619) 756-7300
    Fax: (619) 363-3944
4   marc@kettnerlawcorp.com

5

6   Attorney for Plaintiff, MICHAEL BARAY.

7

8

9                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                         **COUNTY OF SAN DIEGO**

11

12  MICHAEL BARAY,                        Case No.

13              Plaintiff,               **PLAINTIFF'S COMPLAINT FOR:**

14  v.                                   1.  **VIOLATION OF HOMEOWNER BILL**
                                             **OF RIGHTS**
15                                       2.  **STATUORY UNFAIR COMPETITION –**
                                             **CALIFORNIA BUSINESS AND**
16  WELLS FARGO BANK, N.A.                   **PROFESSIONS CODE §17200 ET SEQ.**
    and DOES 1 through 50, inclusive,    3.  **BREACH OF COVENANT OF GOOD**
17                                           **FAITH AND FAIR DEALING**
                                         4.  **NEGLIGENCE**
18
                                             JURY TRIAL DEMANDED
19              Defendants.

20

21

22

23

24       Plaintiff, MICHAEL BARAY, declares as follows:

25

26  //

27  //

28  //

---
                              **- 1 -**

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE**
                              **RELIEF**

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**09/20/2016** at 10:36:38 AM
Clerk of the Superior Court
By Krystal Tavale, Deputy Clerk

37-2016-00032656-CU-OR-NC

**PARTIES**

1.       Plaintiff, MICHAEL BARAY, ("Plaintiff") is, and at all times relevant to the facts herein was, an individual residing in real property commonly known as **349 Oakbranch Drive, Encinitas, CA 92024** ("subject property") located in the County of San Diego, in the State of California.

2.       Plaintiff is informed and believes and based thereon alleges Defendant WELLS FARGO BANK, N.A. ("WELLS FARGO") is, and at all times relevant to the facts herein was, a national association, registered in the state of California, doing business in the County of San Diego, State of California as a loan servicer and investor.

3.       The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants DOES 1 through 50, are unknown to Plaintiff who sues each Defendant by such fictitious names. Plaintiff is informed and believes and based thereon alleges each of the Defendants designated herein as a fictitiously named Defendant is, and in some manner, was responsible for events and happenings referred to herein, either contractually or tortuously. When Plaintiff ascertains the true names of capacities of DOES 1 through 50, he will amend this complaint accordingly.

4.       Plaintiff is informed and believes and based thereon alleges that Defendants and each of them, are, and at all times herein were, the agents, joint ventures, officers, members, representatives, servants, consultants or employees of their co-defendants, and in committing the acts herein allege, were acting within the scope of such affiliation with knowledge, permission, consent or subsequent ratification of their co-defendants.

**JURISDICTION AND VENUE**

5.       This Court has subject matter jurisdiction over this matter, as the Subject Property is located in the County of San Diego, California.

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

6.      In addition, this Court has subject matter jurisdiction over the claims raised herein pursuant to *California Constitution* Article VI, section 10, which grants this Court "original jurisdiction in all causes except those given by statute to other trial courts."

7.      Defendants herein purposefully directed their activities to the State of California. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of San Diego, out of which this action arises and which form the basis of this action.

8.      Defendants either are entities duly licensed to do business in the State of California or are entities that regularly conduct business within this judicial district within California.

9.      Venue is proper for this Court since the Subject Property is located in the County of San Diego and because events or events out of which this action arises and which form the basis for this action arise in the County of San Diego.

## STATEMENT OF FACTS

10.     On or about September 05, 2006, Plaintiff financed the Subject Property for $498,000.00. As evidence of the loan, Plaintiff executed a promissory note ("Note"), and concurrently executed Deed of Trust ("Deed of Trust") as security for the Note. The Deed of Trust for the Subject Property was recorded as Document No. 2006-0629081 in the Official Records of the San Diego County Recorder's Office. The named Lender in the Deed of Trust was World Savings Bank, FSB. The named Trustee in the Deed of Trust was Golden West Savings Association Service Co.

11.     Subsequently, in 2008, World Savings Bank, FSB was acquired by Defendant WELLS FARGO.

12.     In or about August 2015, Plaintiff experienced a decrease in income and immediately contacted WELLS FARGO to inform them of his situation and to seek assistance. A representative at WELLS FARGO advised Plaintiff that he would qualify for a loan modification but in order to apply he needed to be behind on his payments. Additionally, WELLS FARGO

- 3 -

BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF

1    assured Plaintiff that no foreclosure proceedings would commence during the review process if

2    Plaintiff chose to apply.

3         13.    In or about October 2015, relying on the advice given by this financial institution,

4    Plaintiff temporarily withheld payments and submitted all requested documents to WELLS

5    FARGO to be considered for a loan modification.

6         14.    During the next several weeks, Plaintiff regularly contacted WELLS FARGO to

7    obtain a status update on his application. Plaintiff was repeatedly transferred between

8    representatives who could not answer any of his questions or even confirm if his application was

9    being reviewed.

10        15.    As a result of this consistent runaround, Plaintiff asked WELLS FARGO to

11   provide him with a representative he could contact directly for assistance, which WELLS FARGO

12   failed to do.

13        16.    In or about January 2016, Plaintiff once again contacted WELLS FARGO for an

14   update and was informed he needed to submit additional documents. The documents requested

15   were contained in Plaintiff's original submission but WELLS FARGO claimed they had not been

16   received. Plaintiff promptly resubmitted all requested documents.

17        17.    Once again, Plaintiff spent weeks contacting WELLS FARGO seeking a status

18   update, however the numerous representatives Plaintiff spoke with could not provide Plaintiff

19   with any updates or assistance.

20        18.    In or about March 2016, Plaintiff was informed his application for assistance had

21   been denied. Plaintiff contacted WELLS FARGO to find out the reason for the denial and if there

22   was anything he could do. WELLS FARGO failed to provide Plaintiff with an explanation and

23   failed to advise him of his right to appeal.

24        19.    In or about late March 2016, Plaintiff's income increased. As such, Plaintiff

25   promptly submitted a new modification application and consistently called WELLS FARGO for

26   status updates.

27

28

- 4 -

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  20. In or about early April 2016, WELLS FARGO confirmed receipt of Plaintiff's

2 application.

3  21. On or about April 20, 2016, Bernis Gonyea, purporting to be an agent of Clear

4 Recon Corp., and alleging to be the trustee under the Deed of Trust, caused to be recorded a

5 Notice of Default and Election to Sell under Deed of Trust ("NOD") in the Official San Diego

6 County Recorder's Office Records as Document No. 2016-0182658.

7  22. Plaintiff alleges WELLS FARGO dual tracked his home into foreclosure. Plaintiff

8 alleges a complete loan modification application had been submitted and was under review when

9 WELLS FARGO instituted foreclosure proceedings by filing the NOD. Plaintiff relied on

10 assurances from WELLS FARGO that his home would not be foreclosed on while he was still in

11 review for a modification and as such had not pursued other means of assistance.

12  23. Shortly after receiving the NOD, Plaintiff contacted WELLS FARGO and was

13 informed he would not be receiving a modification. Plaintiff asked how that determination was

14 made but received no answers or further assistance, nor was Plaintiff told he could appeal the

15 denial.

16  24. Following the denial, Plaintiff attempted to resume making his monthly payments.

17 WELLS FARGO refused to accept a payment less than the full default amount.

18  25. On or about August 01, 2016, Monica Chavez, purporting to be an agent of Clear

19 Recon Corp., and alleging to be the trustee under the Deed of Trust, caused to be recorded a

20 Notice of Trustee's Sale ("NTS") in the Official San Diego County Recorder's Office Records as

21 Document No. 2016-0386626.

22  26. Defendants are actively moving toward foreclosure of the home and took clear

23 steps to satisfy this state's requirements toward a non-judicial foreclosure, including recording a

24 Notice of Default.

25  27. Plaintiff now faces the loss of the Subject Property, as well as lost the opportunity

26 to pursue foreclosure prevention options that he would have pursued but for the Defendant's

27 violation of Cal. Civ. Code § 2924 *et. seq.* Defendant violated communication requirements under

28

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   the California Homeowner Bill of Rights and failed to rescind the Notice of Default to remedy

2   said violations.

3       28.     Consequently, Plaintiff is informed and believes and based thereon alleges that

4   the negotiations with Defendant were not in good faith, and were a mere "smoke screen" for use

5   by Defendant to lull Plaintiff into a state of complacency while his home is foreclosed on and

6   taken from him.

7       29.     By way of this Complaint, Plaintiff seeks a temporary restraining order, followed

8   by a preliminary injunction, enjoining Defendants from selling Plaintiff's property at auction.

9

10              **FIRST CAUSE OF ACTION**
11      **VIOLATION OF CALIFORNIA HOMEWONER BILL OF RIGHTS**

12      30.     Plaintiff hereby incorporates by this reference paragraphs 1 through 29, as

13  though fully set forth herein.

14      31.     The Homeowner Bill of Rights consists of a series of related bills including two

15  identical bills that were passed on July 2, 2012 by the state Senate and Assembly: AB 278 (Eng,

16  Feuer, Pérez, Mitchell) and SB 900 (Leno, Evans, Corbett, DeSaulnier, Pavley, Steinberg). Both

17  of which ultimately give rights back to borrowers and create a system in which banks can be held

18  accountable for pursuing their own interests above the borrowers.

19      32.     Cal. Civ. Code § 2923.6 prohibits "dual tracking," the practice of evaluating a

20  borrower for a modification while simultaneously proceeding with a foreclosure. If a borrower

21  submits a complete loan modification application, the mortgage servicer is prohibited from

22  initiating or continuing foreclosure proceedings until the mortgage servicer makes a written

23  determination that the borrower is not eligible for a loan modification, and any appeal period

24  has expired. Cal. Civ. Code § 2923.6(c)(1).

25      33.     Plaintiff alleges WELLS FARGO filed the NOD while Plaintiff's complete

26  application was still under review.

27      34.     Cal. Civ. Code § 2923.6(f) provides that "following the denial of a first lien loan

28  modification application, the mortgage servicer shall send a written notice to the borrower

- 6 -

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1 | identifying the reasons for denial," including the amount of time from the date of the denial

2 | letter in which the borrower may request an appeal, instructions regarding how to appeal the

3 | denial, information regarding how the decision was made, and a description of other foreclosure

4 | prevention alternatives for which the borrower may be eligible. Cal. Civ. Code § 2923.6(f).

5 |    35.    Furthermore, "the borrower shall have at least 30 days from the date of the

6 | written denial to appeal the denial and to provide evidence that the mortgage servicer's

7 | determination was in error." Cal. Civ. Code § 2923.6(d).

8 |    36.    Plaintiff alleges that following both denials, WELLS FARGO failed to provide

9 | him with the required written notice and aforementioned information. Plaintiff was never

10 | informed of his right to appeal the denials, what calculations were used in the review, or what

11 | alternatives were available.

12 |    37.    Cal. Civ. Code § 2923.7 provides that upon the request of a foreclosure

13 | prevention alternative, the mortgage servicer "shall promptly establish a single point of contact

14 | and provide the borrower one or more direct means of communication with the single point of

15 | contact." This single point of contact is required to inform borrowers of the status of their

16 | applications and help them apply for all available loss mitigation options.

17 |    38.    Despite Plaintiff's request for assistance with an alternative to foreclosure, in

18 | addition to his specific request for a SPOC, the numerous representatives at WELLS FARGO

19 | Plaintiff spoke with were unable and/or unwilling to help and consistently gave Plaintiff vague

20 | and inconsistent answers to questions. Said representatives failed to offer adequate assistance to

21 | Plaintiff including further instructions and status updates regarding his application for assistance.

22 | Defendant's inability to accurately inform Plaintiff of his application status or his ability to appeal

23 | the denials cost Plaintiff both valuable time and the ability to exercise his right to appeal and

24 | ensure the denial was based on accurate calculations and information.

25 |    39.    Cal. Civ. Code § 2924.10 requires servicers to respond to any submitted

26 | application documents within five business days to inform the borrower that the servicer received

27

28

- 7 -

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   the application and which, if any, documents are missing. Servicers are also required to describe

2   the loan modification process. Cal. Civ. Code § 2924.10(a)(1).

3        40.    Plaintiff alleges that WELLS FARGO failed to acknowledge his initial submission

4   for over a month and subsequently failed to timely respond to the additional documents he was

5   asked to submit. This delay in acknowledging the receipt of documents and informing Plaintiff

6   of what additional documents were required needlessly dragged out Plaintiff's review process and

7   pushed him deeper into default.

8        41.    Cal. Civ. Code § 2923.55 provides the following: "a mortgage servicer shall send

9   the following information in writing to the borrower...

10             (A) A statement that the borrower may request the following:

11                     (i) A copy of the borrower's promissory note or other evidence of

12                     indebtedness.

13                     (ii) A copy of the borrower's deed of trust or mortgage.

14                     (iii) A copy of any assignment, if applicable, of the borrower's mortgage

15                     or deed of trust required to demonstrate the right of the mortgage servicer

16                     to foreclose.

17                     (iv) A copy of the borrower's payment history since the borrower was

18                     last less than 60 days past due."

19        42.    WELLS FARGO failed to provide Plaintiff with a statement informing him that

20   he may request the aforementioned documents, in violation of Cal. Civ. Code § 2923.55.

21        43.    Plaintiff has suffered and will continue to suffer substantial irreparable harm as a

22   result of these violations, including but not limited to the potential loss of the Subject Property,

23   the cost and expense of the instant pending litigation, continuing emotional distress, and other

24   actual consequential damages that will be proven on date of trial. Furthermore, Plaintiff has

25   been harmed in that he was unable to exercise his right to appeal and to secure other alternatives

26   to foreclosure.

27

28

- 8 -

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

44.     Under California law, a borrower may bring an action for injunctive relief to enjoin a material violation of Cal. Civ. Code §§ 2923.55, 2923.6, 2923.7, 2924.10, or 2924.11. Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the bank has corrected and remedied the violations giving rise to the action for injunctive relief. Civil Code § 2924.12.

45.     As such, because of WELLS FARGO's material violations of the aforementioned Civil Code sections, Plaintiff is entitled to injunctive relief.

**SECOND CAUSE OF ACTION**
**STATUTORY UNFAIR COMPETITION – CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 ET SEQ.**

46.     Plaintiff hereby incorporates by this reference, paragraphs 1 through 45, as though fully incorporated herein.

47.     California's Unfair Competition Law ("UCL") defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code §§ 17200 et. seq.

48.     Specifically, Defendant is unlawfully and unfairly proceeding with foreclosure against California homeowners, including Plaintiff, in direct violation of California Civil Code foreclosure procedure statutes, including newly amended statutes implemented effective January 1, 2013 by way of AB 237 and SB 900.

49.     Under California law, initiation of foreclosure, as done here through the filing of the NOD and NTS, is sufficient for UCL standing. *Woodring v. Ocwen Loan Servicing, LLC*, 2014 WL 3558716 (C.D. Cal. July 18, 2014).

50.     Upon information and belief, WELLS FARGO has a pattern and practice of foreclosing on property of California homeowners without contacting them to explore options to avoid foreclosure as required by law. In fact, as was the case here, WELLS FARGO is purposefully precluding homeowners' attempts to apply and qualify for any and all workout options.

- 9 -

BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF

1    51.    Upon information and belief, WELLS FARGO has a pattern and practice of

2  foreclosing on property of California homeowners without giving opportunity for, agreeing to or

3  implementing a modification or workout as required by Cal. Civ. Code § 2923.6 when loan

4  payments are in default or default is reasonably foreseeable and anticipated recovery under the

5  workout exceeds the anticipated recovery through foreclosure on a net present value basis.

6    52.    Furthermore, WELLS FARGO has a pattern and practice of failing to assign

7  borrowers a single point of contact that meets the standards set forth in Cal. Civ. Code § 2923.7

8  after borrowers, including Plaintiff, request a foreclosure prevention alternative.

9    53.    To bring a claim under the "fraudulent" prong of the UCL, borrowers must show

10  that members of the public are likely to be deceived by servicer's actions. Here, Defendant's

11  assurance that becoming delinquent would eventually lead to a modification, and then its

12  subsequent delay in processing applications and documentation, resulted in increasing late fees

13  and penalties. This practice could be construed as deceptive to the public. *Pestana v. Bank of*

14  *America, N.A.,* 2014 WL 2616840 (Cal. Ct. App. June 12, 2014).

15    54.    The "unfair" prong of the UCL refers to practices that violate legislatively stated

16  public policy. The Homeowner Bill of Rights demonstrates the strong public policy in favor of

17  protecting homeowners from foreclosure, as evidenced by recently-enacted state and federal

18  regulations. *See, e.g.,* Cal. Civ. Code §2923.6 (encouraging the option of loan modification for

19  borrowers). Defendant's unlawful practices described above runs counter to California's stated

20  public policy and have given it an unfair advantage over their competitors. *Perez v.*

21  *CitiMortgage, Inc.,* 2014 WL 2609656, at *8 (C.D. Cal. June 10, 2014) (finding servicer's

22  misrepresentations regarding borrower's application status led to a deliberately drawn-out and

23  unsuccessful modification process, resulting in harm to the borrower that outweighed the utility

24  of servicer's action).

25    55.    Plaintiff has been damaged in the amount of foreclosure fees and costs already

26  charged to and added to Plaintiff's loan, in an amount to be proven at trial.

27

28

BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF

56.     The fees and costs charged by Defendant were charged without any legal authority to do so and in direct violation of the statutory mandate of Cal. Civ. Code §§ 2923.55 and 2923.6.

57.     Defendant must be required to disgorge any profit or gain that it obtained as a result of its wrongful conduct as herein alleged.

58.     Plaintiff is entitled to equitable relief in the form of an order requiring Defendant to disgorge all profits or gain it has obtained from Plaintiff or at the expense of Plaintiff and members of the general public by reason of its unlawful, unfair or fraudulent business act(s) and practice(s) and an injunction enjoining Defendant from continuing said acts or practices.

## THIRD CAUSE OF ACTION
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

59.     Plaintiff hereby incorporates by this reference paragraphs 1 through 58, as though fully set forth herein.

60.     Defendant's conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law. This covenant creates an obligation in Defendant not to hinder or prevent Plaintiff's ability to perform under the contract or receive the benefit of the contract.

61.     On or about September 05, 2006, Plaintiff entered into a loan agreement, executing a Promissory Note and Deed of Trust in favor of World Savings Bank, FSB, and subsequently WELLS FARGO. Plaintiff alleges that WELLS FARGO breached the covenant of good faith and fair dealing and interfered with Plaintiff's ability to perform under the contract by inducing Plaintiff to stop making payments on his mortgage loan and prolonging the decision of whether Plaintiff would receive assistance.

62.     For years, Plaintiff substantially performed under the loan agreement, making his monthly payments on time and in full every month. Based upon WELLS FARGO's instructions and assurances, however, Plaintiff withheld payments and applied for a modification.

63.     Therefore, because WELLS FARGO induced Plaintiff not to perform under the contract and then subsequently failed to conduct a modification review as required by law,

- 11 -
BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Plaintiff's performance was excused as set forth under Cal. Civ. Code § 1511, which states if a

2   defendant does some act naturally tending to induce the plaintiff not to perform, the plaintiff's

3   failure to perform is excused. *See Boring v. Wells Fargo Mortg., LLC*, 2014 WL 5473118 (E.D.

4   Cal. Oct. 28, 2014) (servicer's inducement of borrower's delinquency excused borrower's

5   performance under the deed of trust).

6         64.    When a party is excused from performing, he is entitled to all the benefits of the

7   contract had it been performed by both parties. Cal. Civ. Code § 1512. As such, no conditions

8   existed that would interfere with WELLS FARGO performing under the contract, and all

9   conditions necessary for Defendant to fulfill its obligations under the contract had occurred

10  when Defendant coerced Plaintiff into missing payments by promising Plaintiff that he would

11  not face foreclosure if he did so. In fact, this promise was designed to induce and coerce

12  Plaintiff to miss payments so that Defendant could foreclose on Plaintiff's loan.

13        65.    As a proximate result of Defendant's acts and practices, Plaintiff's credit has

14  been detrimentally impacted, and Plaintiff now risks the loss of his home through foreclosure.

15        66.    Plaintiff has incurred contract damages, according to proof at trial, attorney's

16  fees, costs to save the home, and loss of equity.

17

18  **FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
19

20        67.    Plaintiff hereby incorporates by this reference, paragraphs 1 through 66, as

21  though fully incorporated herein.

22        68.    The elements of a cause of action for negligence are well established. They are

23  (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate

24  or legal cause of the resulting injury. *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917

25  [50 Cal.Rptr.2d 309, 91 1 P.2d 496].

26        69.    At all times relevant herein, WELLS FARGO, acting as Plaintiff's lender and

27  servicer, had a duty to exercise reasonable care and skill to maintain proper and accurate loan

28  records and to discharge and fulfill the other incidents attendant to the maintenance, accounting

- 12 -
BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF

1  and servicing of loan records, including, but not limited to, disclosing to Plaintiff the real status

2  of any foreclosure actions taken by it, refraining from taking any action against Plaintiff outside

3  its legal authority, and providing all relevant information regarding Plaintiff's loan accounts

4  with Defendants.

5        70.     In *Alvarez v. BAC Home Loans Servicing*, 228 Cal. App. 4th 941 (2014), the

6  court found that, though a servicer is not obligated to initiate the modification process or to

7  offer a modification, once it agrees to engage in the process with the borrower it owes a duty of

8  care not to mishandle the application or negligently conduct the modification process. *See also,*

9  *Ware v. Bayview Loan Servicing, LLC,* 2013 WT 6247236, at *9 (S.D. Cal. Oct. 29, 2013)

10  [denying motion to dismiss borrower's negligence claim because servicer may owe a duty of

11  care to maintain proper records and timely respond to modification applications].

12        71.     Accordingly, by engaging in protracted loan modification negotiations with

13  Plaintiff, Defendant owed Plaintiff a duty to conduct honest, timely and accurate evaluations of

14  Plaintiff's loan modification applications and to carefully handle Plaintiff's sensitive financial

15  and personal information contained in those applications.

16        72.     It is true that some courts have held that in the standard lender/borrower

17  relationship, a duty of care is not necessarily created. For instance, the court held in *Nymark v.*

18  *Heart Federal Savings & Loan Association*, 231 Cal. App. 3d 1089, l095 (1991) that "as a

19  general rule, a financial institution owes no duty of care to a borrower when the institution's

20  involvement in the loan transaction does not exceed the scope of its conventional role as a mere

21  lender of money."

22        73.     However, the *Nymark* court simply found that a duty was not owed under the

23  facts in that case after analyzing them pursuant to the six part test established in *Biakanja v.*

24  *Irving*, 49 Cal.2d 647, 122 P.2d 294, which looks to (1) the extent to which the transaction was

25  intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of

26  certainty that the plaintiff suffered injury, (4) the closeness of the connection between the

27

28

**- 13 -**

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   defendant's conduct and the injury suffered, (5) the moral blame, and (6) the policy of

2   preventing future harm.

3   74.   In analyzing the first *Biakanja* factor, whether or not the transaction was

4   intended to affect the plaintiff, courts have held that a defendant's conduct is found to affect the

5   plaintiff if the defendant commits the conduct with knowledge of plaintiff's circumstances. *See*

6   *e.g., Jolley v. Chase Financial, LLC* (2013) 213 Cal.App.4th 872, 900.

7   75.   Here, by advising Plaintiff to fall behind on his mortgage, stringing Plaintiff

8   along for months in pursuit of a modification, and then failing to inform him of his right to

9   appeal the denials, WELLS FARGO undeniably intended to affect Plaintiff. Defendant knew

10  that prolonging Plaintiff's review period for so long and failing to give Plaintiff the opportunity

11  to appeal the denial would forever change his status regarding his mortgage for the worse.

12  76.   Defendant should have foreseen the harm being done to Plaintiff due to its

13  knowledge and expertise in the financial industry as well as complete control over Plaintiff's

14  loan and loan modification review process. Further, it only requires common sense to determine

15  that (1) if a lender decides to foreclose on a borrower's home without first providing the

16  borrower a written determination of the borrower's loan modification application, or advise him

17  of his appeal rights, the ensuing foreclosure will ultimately harm the borrower; and (2) that a

18  borrower's credit will be harmed and the borrower will owe more in arrears the longer a lender

19  drags out stalls the loan modification process. Thus, foreseeability of harm is clear.

20  77.   The foreseeability of harm to Plaintiff was high because the failure to work with

21  Plaintiff as promised, the failure to provide a timely, accurate, and good faith loan modification

22  review, and the failure to allow Plaintiff to appeal the denials has caused Plaintiff to be in real

23  danger of losing his home and having his credit destroyed, not to mention limiting his options to

24  those that will only benefit Defendant in the long run. Plaintiff has been injured: his credit has

25  been destroyed, he lost the ability to cure the delinquency on his loan, and he faces the

26  imminent danger of losing his home.

27

28

- 14 -

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

78.     In regard to the closeness of the connection between Defendant's conduct and Plaintiff's injury, Defendant's conduct was firmly and intimately tied to the harm because but for the actions and omissions of Defendant, Plaintiff would not be facing imminent foreclosure of his home. Because Defendant was in full control of the loan modification process, it is reasonably foreseeable that Plaintiff would rely on WELLS FARGO to conduct a good faith loan modification review and would not seek other alternatives to prevent foreclosure of the home or mitigate the debt owed.

79.     In regard to moral blame, Defendant's conduct was morally reprehensible as it acted without any regard for distressed homeowners, including the Plaintiff, who tried desperately to save the Property from foreclosure during a national recession. WELLS FARGO coerced Plaintiff into falling behind on his mortgage, had him submit a modification application, reneged on the promise to properly evaluate Plaintiff for a modification, and failed to inform him of his ability to appeal.

80.     WELLS FARGO was uncommunicative and left Plaintiff in the dark for months while dual tracking him into default. Subjecting a borrower to dual tracking is illegal conduct that reinforces the view that Defendants' conduct was blameworthy. *See Ansanelli v. JPMorgan Chase Bank, N.A.*, No 10-cv-03892-WHA, 2011 WL 1134451, at *1.

81.     Furthermore, at the time Defendant made representations and/or omissions to Plaintiff as alleged above, it knew, or had reason to know, that said representations and/or omissions were in fact false, and nevertheless made them with the intent to defraud Plaintiff and cause Plaintiff to believe his home would not be foreclosed upon. Had Plaintiff known the true facts, that Defendant never intended to offer a modification and that he could appeal, Plaintiff would have pursued other available legal remedies to protect his interests and would have appealed the denial to ensure accurate information and calculations were used.

82.     In analyzing the final *Biakanja* factor, the policy of preventing future harms, it is undisputedly clear that public policy encourages lenders and borrowers to work together to prevent a borrower from defaulting on his or her loan. *See Jolley,* 213 Cal.App.4th at 903 (the

- 15 -

BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  ongoing financial crises has caused the federal government to adopt programs that encourage

2  lenders and borrowers to work together to prevent a borrower from defaulting on their loan).

3  Here, any assistance Defendant offered to Plaintiff was done in bad faith and without any

4  controls or supervision to ensure that Plaintiff would not be left worse off as a result of the loan

5  modification application process.

6       83.    Based on the foregoing, it is exceedingly clear that the *Biakanja* factors favor

7  imposing a duty of care on Defendant, as its actions and conduct have gone beyond the role of a

8  mere money lender.

9       84.    In addition, pursuant to the doctrine negligence per se, Defendants owe a duty to

10  comply with the laws, and Defendant is liable where Defendant violates the very laws intended

11  to protect the Plaintiff from unwarranted foreclosure and said violations caused the injuries

12  suffered by Plaintiff.

13       85.    Defendant's conduct imposed a duty to proceed with due care by voluntarily

14  undertaking to come to the aid of Plaintiff during his time of significant distress so as not to

15  leave him worse off than he had been.

16       86.    Defendant breached its duty of care owed to Plaintiff by partaking in the

17  following unreasonable conduct that caused injury to Plaintiff:

18      a.    WELLS FARGO negligently failed to provide Plaintiff with written notice of

19          the denial.

20      b.    WELLS FARGO failed to inform Plaintiff in writing that he may request the

21          documents specified in Cal. Civ. Code § 2923.55.

22      c.    WELLS FARGO negligently recorded the NOD against the property while

23          Plaintiff's complete loan modification application was in active review.

24      d.    WELLS FARGO failed to provide Plaintiff with a single point of contact

25          who was familiar with his file and circumstances as required under Cal. Civ.

26          Code §2923.7.

27

28

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF**

     e.     WELLS FARGO unfairly handled Plaintiff's loan modification applications by unreasonably delaying the review process.

     f.     WELLS FARGO negligently pushed Plaintiff into default by advising him to stop making payments and then by refusing to honor its promise to consider him for a modification.

     g.     WELLS FARGO negligently failed to inform Plaintiff that he may appeal the denial of his applications.

87.     Additionally, Defendant violated numerous statutes that serve as the underlying violations for liability under the doctrine of negligence per se, including Cal. Civ. Code §§ 2923.55, 2923.6, 2923.7, and 2924.

88.     These statutes were enacted by the California legislature specifically to protect the rights of innocent homeowners suffering from financial hardships. These statutes were also enacted by the California legislature specifically to prevent the same injury that Plaintiff will imminently suffer: wrongful foreclosure and subsequent eviction resulting from a wrongful foreclosure.

89.     The actions of Defendant summarily denied Plaintiff of any opportunity to utilize the avenues at his disposal to avoid the loss of his home. Defendant's actions, therefore, are a substantial factor in Plaintiff's harm.

90.     Defendant's violations directly and proximately caused the injuries suffered by Plaintiff. But for WELLS FARGO promising to consider Plaintiff for a modification, Plaintiff would not have spent months repeatedly resubmitting documents. Additionally, had Defendant complied with the aforementioned laws to begin with, Plaintiff would not have suffered the very injuries that give rise to this Complaint because he would have been able to successfully pursue and obtain a non-foreclosure alternative and remain current on his loan.

91.     Due to Defendant's negligent conduct, Plaintiff suffered monetary loss, severe emotional stress at the impending loss of Plaintiff's home, loss of home equity, damaged credit, and more.

- 17 -

BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

92.    Plaintiff demands damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

1.    A declaratory judgment and order of this Court that:

(A)    Defendants, and each of them, may not foreclose on the Property until they have honored and proven that all statutory requirements stemming from and relating to Plaintiff's options to avoid foreclosure have been met.

(B)    That Defendants failed to abide by their own guidelines in qualifying or reviewing Plaintiff for a loan modification in violation of Cal. Civil Code §2923.6.

(C)    That Defendants and each of them, failed to provide the required statutory notifications and undertake the required courses of action as mandated under California's Civil Code.

2.    For a temporary restraining order, preliminary injunction and permanent injunction prohibiting Defendants from engaging in unlawful and deceptive acts and practices of foreclosing on property of California homeowners, including Plaintiff, without considering them for assistance within their guidelines, and when anticipated recovery through a modification or workout plan exceeds anticipated recovery through foreclosure on a net present value basis.

3.    For an award of attorney's fees pursuant to Cal. Civ. Code § 2924.19

4.    For disgorgement of Defendants' illegal profits and gain, including but not limited to all foreclosure fees and costs charged California homeowners, including Plaintiff.

5.    For an award of actual damages in an amount within the jurisdictional limits of this Court to be proven at trial.

6.    For general damages, according to proof.

7.    For special damages, according to proof.

8.    For consequential damages, and incidental damages, according to proof.

BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT A TO NOTICE OF REMOVAL
PAGE 25

1    9.    For an award of reasonable attorney's fees pursuant to agreement of the parties,

2    according to proof.

3    10.    For an award of interest, including prejudgment interest, as provided by law.

4    11.    For costs of suit; and

5    12.    For such other relief as the Court deems just and proper.

6

7

8    DATED: September 20, 2016                KETTNER LAW CORPORATION

9

10                                      BY:   _____

11                                            MARC APPLBAUM
                                              Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BARAY v. WELLS FARGO BANK, N.A. – PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

EXHIBIT A TO NOTICE OF REMOVAL
PAGE 26

EXHIBIT B

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>WELLS FARGO BANK, N.A.; and DOES 1 through 50, inclusive | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MICHAEL BARAY

*FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/20/2016** at 10:38:38 AM

Clerk of the Superior Court
By Krystal Tavale, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Superior Court, County of San Diego<br><br>325 South Melrose Drive<br>Vista, CA 92081 | **CASE NUMBER**<br>*(Número del)* 37-2016-00032656-CU-OR-NC |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Marc Applbaum, 2150 West Washington Street, Suite 104, San Diego, CA 92110  619-756-7300

| DATE:  09/20/2016 | Clerk, by | K. Tavale | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL] Superior Court of California County of San Diego

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Wells Fargo Bank, N.A.

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☒ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 27

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| KETTNER LAW CORP.<br>Marc Applbaum (SBN 222511)<br>2150 West Washington Street #104<br>San Diego, CA 92110 | |

TELEPHONE NO.: 619-756-7300     FAX NO.: 619-363-3944

ATTORNEY FOR *(Name):* Michael Baray

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego

STREET ADDRESS: 325 South Melrose Drive

MAILING ADDRESS:

CITY AND ZIP CODE: Vista, CA 92081

BRANCH NAME: North County Regional Center

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/20/2016** at 10:36:38 AM

Clerk of the Superior Court
By Krystal Tavale,Deputy Clerk

CASE NAME:
Baray v. Wells Fargo Bank, N.A.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | 37-2016-00032656-CU-OR-NC |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount        (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: Judge Timothy M. Casserly |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation**<br>**(Cal. Rules of Court, rules 3.400–3.403)** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Mass tort (40) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | condemnation (14) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [X] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

4. Number of causes of action *(specify):* 4

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 09/20/16

Marc Applbaum

_____(TYPE OR PRINT NAME)_____      ►_____(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)_____

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

1  **Kettner Law Corporation**
   Marc Applbaum (SBN 222511)
2  2150 W Washington Street, Suite 104
   San Diego, CA 92110
3  Tel: (619) 756-7300
   Fax: (619) 363-3944
4  marc@kettnerlawcorp.com
5
6  Attorney for Plaintiff, MICHAEL BARAY.
7
8
9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10
11                       **COUNTY OF SAN DIEGO**
12
   MICHAEL BARAY,                    Case No.  37-2016-00032656-CU-OR-NC
13
14                                   **NOTICE OF PENDENCY OF ACTION**
              Plaintiff,            **[CCP § 405.20]**
15  v.
16  WELLS FARGO BANK, N.A.
   and DOES 1 through 50, inclusive,
17
18           Defendants.
19
20
21  _____
22
23       **NOTICE IS HEREBY GIVEN** that the above-entitled action was filed in the above
24  court on September 20, 2016, by MICHAEL BARAY, Plaintiff, against WELLS FARGO
25  BANK, N.A. and DOES 1 through 50, inclusive, Defendants. The action effects title to real
26  property and the validity of foreclosure actions taken by defendants in the complaint. The
27
28

                                    - 1 -
              **BARAY v. WELLS FARGO BANK, N.A. – NOTICE OF PENDENCY OF ACTION**

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/20/2016** at 10:36:38 AM
Clerk of the Superior Court
By Krystal Tavale, Deputy Clerk

specific real property affected by the action is located in the County of San Diego, State of

California, and described as follows:

## LEGAL DESCRIPTION

LOT 262 OF ENCINITAS ESTATES UNIT NO. 3, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8131, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JUNE 18, 1975.

EXCEPTING THEREFROM ALL OILS, MINERALS, COALS, PETROLEUM, GAS AND KINDRED SUBSTANCES UNDER AND IN SAID LAND, BUT WITHOUT RIGHT OF ENTRY OF THE SURFACE THERETO, BUT WITH THE RIGHT, HOWEVER, TO DRILL IN, THROUGH OR UNDER SAID LAND OR TO EXPLORE, DEVELOP OR TAKE ALL MINERALS, COALS, OILS, PETROLEUM, GAS AND OTHER KINDRED SUBSTANCES IN AND FROM SAID LAND, ALL SUCH OPERATIONS TO BE CONDUCTED ONLY BELOW A DEPTH OF 500 FEET BELOW THE SURFACE.

APN: 259-542-03-00

DATED: September 20, 2016                    KETTNER LAW CORPORATION


BY: _____
         MARC APPLBAUM
         Attorney for Plaintiff

- 2 -
BARAY v. WELLS FARGO BANK, N.A. – NOTICE OF PENDENCY OF ACTION

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 325 S. Melrose |
| MAILING ADDRESS: | 325 S. Melrose |
| CITY AND ZIP CODE: | Vista, CA 92081 |
| BRANCH NAME: | North County |
| TELEPHONE NUMBER: | (760) 201-8031 |

PLAINTIFF(S)/PETITIONER(S)/APPELLANT(S): Michael Baray

DEFENDANT(S)/RESPONDENT(S): Wells Fargo Bank NA

Short Title: Baray v Wells Fargo Bank NA [IMAGED]

| **NOTICE OF HEARING** | CASE NUMBER:<br>37-2016-00032656-CU-OR-NC |
|---|---|

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above.  All inquiries regarding this notice should be referred to the court listed above.

| **TYPE OF HEARING** | **DATE** | **TIME** | **DEPT** | **JUDGE** |
|---|---|---|---|---|
| Civil Case Management Conference | 02/24/2017 | 09:00 am | N-31 | Timothy M. Casserly |

Counsel: Check service list.  If you have brought a party into this case who is not included in the service list, San Diego Superior Court Local Rules, Division II, requires you to serve the party with a copy of this notice.

A case management statement must be completed by counsel for all parties or parties in pro per and timely filed with the court at least 15 days prior to the initial case management conference.  (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR options.

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 31

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

North County
325 S. Melrose
Vista, CA 92081

**SHORT TITLE:** Baray v Wells Fargo Bank NA [IMAGED]

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER: |
| --- | --- |
| | **37-2016-00032656-CU-OR-NC** |

I certify that I am not a party to this cause. I certify that a true copy of NOTICE OF HEARING was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The certification occurred at Vista, California on 09/20/2016. The mailing occurred at Gardena, California on 09/21/2016.

Clerk of the Court, by: _____ , Deputy
                              K. Tavale

MARC APPLBAUM
KETTNER LAW CORPORATION
2150 W WASHINGTON STREET # 104
SAN DIEGO, CA 92110

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 32



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2016-00032656-CU-OR-NC      CASE TITLE: Baray v Wells Fargo Bank NA [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
(3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 33

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u>  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 34

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | FOR COURT USE ONLY |
|---|---|

STREET ADDRESS:         325 S. Melrose

MAILING ADDRESS:       325 S. Melrose

CITY, STATE, & ZIP CODE:  Vista, CA  92081-6695

BRANCH NAME:            North County

PLAINTIFF(S):   Michael Baray

DEFENDANT(S): Wells Fargo Bank NA

SHORT TITLE:    BARAY V WELLS FARGO BANK NA [IMAGED]

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2016-00032656-CU-OR-NC |
|---|---|

Judge: Timothy M. Casserly                                                    Department: N-31

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)            ☐  Non-binding private arbitration

☐  Mediation (private)                    ☐  Binding private arbitration

☐  Voluntary settlement conference (private)   ☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Neutral evaluation (private)           ☐  Non-binding judicial arbitration (discovery until 30 days before trial)

☐  Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____        Date: _____

_____            _____
Name of Plaintiff                             Name of Defendant

_____            _____
Signature                                     Signature

_____            _____
Name of Plaintiff's Attorney                  Name of Defendant's Attorney

_____            _____
Signature                                     Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  09/20/2016                           _____
                                              JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)      **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**          Page: 1

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 35

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DÍEGO | |
|---|---|
| STREET ADDRESS: | 325 S Melrose DRIVE |
| MAILING ADDRESS: | 325 S Melrose DRIVE |
| CITY AND ZIP CODE: | Vista, CA 92081-6695 |
| BRANCH NAME: | North County |
| TELEPHONE NUMBER: | (760) 201-8031 |

| PLAINTIFF(S) / PETITIONER(S): | Michael Baray |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Wells Fargo Bank NA |
|---|---|

BARAY V WELLS FARGO BANK NA [IMAGED]

| NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE | CASE NUMBER: 37-2016-00032656-CU-OR-NC |
|---|---|

## CASE ASSIGNMENT

Judge:  Timothy M. Casserly                                         Department: N-31

**COMPLAINT/PETITION FILED:** 09/20/2016

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 02/24/2017 | 09:00 am | N-31 | Timothy M. Casserly |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

---

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See Local Rule 5.1.8

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

---

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 36



# Superior Court of California
# County of San Diego

## NOTICE OF ELIGIBILITY TO eFILE
## AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order 051414 at www.sdcourt.ca.gov for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

# Please refer to the General Order - Imaging located on the San Diego Superior Court website at:

http://www.sdcourt.ca.gov/CivilImagingGeneralOrder

Page: 2

EXHIBIT C

RECORDING REQUESTED BY:
~~WORLD SAVINGS BANK~~
*Lenders choice Title*

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0043592278

NOTE AMOUNT: $498,000.00

1803



DOC # 2006-0629081

SEP 05, 2006      8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:            57.00
PAGES:           17            DA:    1



2006-0629081

FOR RECORDER'S USE ONLY

## DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR BIWEEKLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $622,500.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.   **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
     **(A)   Security Instrument.** This Deed of Trust, which is dated **July 28, 2006,** will be called the "Security Instrument."

     **(B)   Borrower. MICHAEL BARAY, AN UNMARRIED MAN** sometimes will be called "Borrower" and sometimes simply "I" or "me."

     **(C)   Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

SD001A (2004-03-2)                     DEED OF TRUST-ADJUSTABLE                 **CA**
DEFERRED INTEREST                              Page 1

LENDER'S USE ONLY

003

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 38

1804                    0043592278

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$498,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **August 14, 2036** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)    The Property which is located at **349 OAKBRANCH DR, ENCINITAS, CA 92024-4738**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 39

**1805**     0043592278

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

**IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

COVENANTS

I promise and I agree with Lender as follows:

**1.    BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.    PAYMENTS FOR TAXES AND INSURANCE**
    **(A)    Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 40

1806          0043592278

**(B)      Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 41

**1807**

0043592278

### 3.  APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

### 4.  BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5.  BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 42

## 1808

0043592278

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

## 6.     BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                                **CA**
                                                     Page 6

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 43

**1809**                    0043592278

## 7.   LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8.   LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9.   AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 44

## 1810

0043592278

**10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)   Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)   Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.   MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 45

# 1811

0043592278

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **349 OAKBRANCH DR, ENCINITAS, CA  92024-4738**.  A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.**  In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD001I (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                                   **CA**
                                                     Page 9

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 46

1812

0043592278

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 47

**1813**

0043592278

(B)     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.     FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 48

· 1814

0043592278

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

__Acceleration of Payment of Sums Secured.__ Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

__Exception to Acceleration of Payment of Sums Secured.__ If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                          **CA**
Page 12

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 49

**1815**

0043592278

**28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.   RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.   STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 50

1816

0043592278

31.    ( X )   QUICK QUALIFYING LOAN PROGRAM

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

32.    (   )   OWNER OCCUPANCY

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

SD001N (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                    CA
Page 14

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 51

1817

0043592278

**BY SIGNING BELOW, I** accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____   (Seal)

MICHAEL BARAY

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)        [AF1 (2004-03-1)]                Page 15                                CA
                         [B01 (2004-03-1)]

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 52

1818

## California All-Purpose Acknowledgement

State of _California_

County of _San Diego_ ] ss.

On _08-01-2006_ before me, _Cheryl Ann Kellerman_ Notary Public
<span style="font-size:smaller">Name of Notary Public</span>

personally appeared _MICHAEL BARAY_

_____ personally known to me OR _X_ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CHERYL ANN KELLERMAN
Commission # 1377431
Notary Public - California
San Diego County
My Comm. Expires Sep 29, 2006

This area for official notarial seal

WITNESS my hand and official seal.

_Cheryl Ann Kellerman_
<span style="font-size:smaller">Signature of Notary Public</span>

Cheryl Ann Kellerman

My commission expires on: _Sept 29, 2006_

Phone No. _858-775-2601_

──────── **Optional** ────────

_Though the information in this section is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document._

### Description of Attached Document

Title or Type of Document: _Deed of Trust_

Document Date: _08-01-2006_      Number of Pages: _15_

Signer(s) other than named above: _____

© 2004 Notary Learning Center - All Rights Reserved         Order Online at www.NotaryLearningCenter.com

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 53

1819

## EXHIBIT "A"

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE CITY OF ENCINITAS
COUNTY OF SAN DIEGO, STATE OF CALIFORNIA:

LOT 262 OF ENCINITAS ESTATES UNIT NO. 3, IN THE COUNTY OF SAN
DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 8131,
FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY,
JUNE 18, 1975.

EXCEPTING THEREFROM ALL OILS, MINERALS, COALS, PETROLEUM, GAS AND
KINDRED SUBSTANCES UNDER AND IN SAID LAND, BUT WITHOUT RIGHT OF
ENTRY OF THE SURFACE THERETO, BUT WITH THE RIGHT, HOWEVER, TO
DRILL IN, THROUGH OR UNDER SAID LAND OR TO EXPLORE, DEVELOP OR
TAKE ALL MINERALS, COALS, OILS, PETROLEUM, GAS AND OTHER KINDRED
SUBSTANCES IN AND FROM SAID LAND, ALL SUCH OPERATIONS TO BE
CONDUCTED ONLY BELOW A DEPTH OF 500 FEET BELOW THE SURFACE
THEREOF.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 259-542-03-00; SOURCE OF TITLE IS DOCUMENT NO. 2003-
1376233 (RECORDED 11/14/03)

EXHIBIT C TO NOTICE OF REMOVAL
PAGE 54

EXHIBIT D



**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA  94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office.  The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws.  The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer
Assistant Regional Director

cc:  Robert Burns, FDIC - Atlanta

EXHIBIT D TO NOTICE OF REMOVAL
PAGE 55

EXHIBIT E



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:   Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
      bank and application to merge the converted bank with and into Wells Fargo Bank,
      National Association, Sioux Falls, South Dakota
      Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert

EXHIBIT E TO NOTICE OF REMOVAL
PAGE 56

EXHIBIT F

Back to Search Bank Find

Your Bank at a Glance as of 11/10/2011 .

---

**Wells Fargo Bank, National Association** (FDIC Cert: 3511) **is FDIC Insured.**

---

**Wells Fargo Bank, National Association** has been FDIC insured since **January 1, 1934.**
It was established on **January 1, 1870.**
Its main office (headquarters) is located at:

    **101 N. Phillips Avenue**
    **Sioux Falls, South Dakota 57104**
    **County of Minnehaha**

**Wells Fargo Bank, National Association** has **6453** Domestic Branches (Offices) located in **41** state(s) and **37** Foreign Offices.
(Check to locate Branches (Offices) by state.)

Wells Fargo Bank, National Association's reported (or primary) website: http://www.wellsfargo.com:80/

**Wells Fargo Bank, National Association** is chartered as a National Bank. Therefore the primary federal regulator is the **Office of the Comptroller of the Currency (OCC)**. For **consumer assistance** regarding an issue with this institution, please contact the **OCC** directly using http://www.helpwithmybank.gov/.

    Calculate your FDIC insurance coverage at Wells Fargo Bank, National Association using FDIC EDIE at www.fdic.gov/edie.
    Last financial information available about Wells Fargo Bank, National Association.
    Historical profile of Wells Fargo Bank, National Association.

    For additional information please click on one of the following:
1. For more information on Federal Deposit Insurance, Your Insured Deposits or Insured or Not Insured
2. View the industry's overall picture - Statistics at a Glance
   (This will open a new window.)
3. Current Financial data about your bank - Institution Directory – Two years Financial Report
   (This will open a new window.)
4. Examine your bank's financial data - CALL/TFR Financial Information *9/30/2011 Latest Available*
5. Study branching and deposit market share - Summary of Deposits/Market Share
6. Analyze and compare individual institutions and create custom reports - Institution Directory – Compare
7. Review industry using 8 predefined reports - Statistics on Depository Institutions
8. Identify the latest performance trends in your state - Quarterly Banking Profile State Tables
   (This will open a new window.)
9. Analyze institutions and custom peer groups - Statistics on Depository Institutions
10. View branch office deposit information - Summary of Deposits
11. Community Reinvestment Act (CRA) Performance Ratings - CRA Performance Ratings
12. FDIC's Disclaimer - FDIC's Disclaimer

Home | Contact Us | Search | Help | SiteMap | Forms

Website Policies | Privacy Policy | USA.gov | FDIC Office of Inspector General

Freedom of Information Act (FOIA) Service Center | FDIC Open Government Webpage | No FEAR Act Data

EXHIBIT F TO NOTICE OF REMOVAL
PAGE 57



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFIED ARTICLES OF ASSOCIATION

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and correct copy, as recorded in the Office of the Comptroller of the Currency, of the currently effective Articles of Association for "Wells Fargo Bank, National Association," Sioux Falls, South Dakota (Charter No. 1).



IN TESTIMONY WHEREOF, today, March

27, 2012, I have hereunto subscribed my

name and caused my seal of office to be

affixed to these presents at the U.S.

Department of the Treasury, in the City of

Washington, District of Columbia.

*John Walsh*

———————————————

Acting Comptroller of the Currency

EXHIBIT F TO NOTICE OF REMOVAL
PAGE 58

# ARTICLES OF ASSOCIATION
## OF
## WELLS FARGO BANK, NATIONAL ASSOCIATION

## ARTICLE I - NAME

The title of this Association shall be Wells Fargo Bank, National Association. The Association may also use the abbreviation Wells Fargo Bank, N.A.

## ARTICLE II - OFFICES

1. <u>Main Office</u>. The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota. The Board of Directors shall have the power to change the location of the main office to any other place within the limits of the City of Sioux Falls, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

2. <u>Branch Offices</u>. The Board of Directors shall have the power to establish or change the location of any branch or branches of this Association to any other location, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

3. <u>Conduct of Business</u>. The general business of the Association shall be conducted at its main office and its branches.

## ARTICLE III - BOARD OF DIRECTORS

1. <u>Number</u>. The Board of Directors of this Association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full Board of Directors or by resolution of the shareholders at any annual or special meeting thereof.

2. <u>Qualification</u>. Each director, during the full term of his or her directorship, shall own a minimum of $1,000 par value of stock of this Association or an equivalent interest, as determined by the Comptroller of the Currency, in any company which has control over this Association within the meaning of Section 2 of the Bank Holding Company Act of 1956.

3. <u>Vacancy</u>. The Board of Directors, by the vote of a majority of the full Board, may, between annual meetings of shareholders, fill vacancies created by the death, incapacity or resignation of any director and by the vote of a majority of the full Board may also, between annual meetings of shareholders, increase the membership of the Board by not more than four members and by like vote appoint qualified persons to fill the vacancies created thereby; provided, however, that at no time shall there be more than twenty-five directors of this Association; and provided further, however, that not more than two members may be added to the Board of Directors in the event that the total number of directors last elected by shareholders was fifteen or less.

4. <u>Appointment of Officers</u>. The Board of Directors shall appoint one of its members President of this Association, who shall act as Chairman of the Board, unless the Board appoints another director to act as Chairman. In the event the Board of Directors shall appoint a President and a Chairman, the Board shall designate which person shall act as the chief executive officer of this Association. The Board of Directors shall have the power to appoint one or more Vice Presidents and to appoint a Cashier and such other officers and employees as may be required to transact the business of this Association.

5. <u>Powers</u>. The Board of Directors shall have the power to define the duties of the officers and employees of this Association; to fix the salaries to be paid to them; to dismiss them; to require bonds from them and to fix the penalty thereof; to regulate the manner in which the increase of the capital of this Association shall be made; to manage and administer the business and affairs of this Association; to make all Bylaws that it may be lawful for them to make; and generally to do and perform all acts that it may be legal for a Board of Directors to do and perform.

## ARTICLE IV - MEETINGS OF SHAREHOLDERS

1. <u>Annual Meeting</u>. The annual meeting of the shareholders for the election of directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office, or such other place as the Board of Directors may designate, on the day of each year specified therefor in the Bylaws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors.

2. <u>Special Meetings</u>. The Board of Directors, the Chairman, the President, or any one or more shareholders owning, in the aggregate, not less than 25 percent of the stock of this Association, may call a special meeting of shareholders at any time.

3. <u>Notice of Meetings</u>. Unless otherwise provided by the laws of the United States, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten days prior to the date of such meeting to each shareholder of record at his or her address as shown upon the books of this Association.

4 <u>Written Consents</u>. Any action required or permitted to be taken at an annual or special meeting of the shareholders of the Association may be taken without prior written notice and without any meeting if such action is taken by written action, containing a waiver of notice, signed by all of the shareholders entitled to vote on that action.

## ARTICLE V - CAPITAL

1. <u>Capitalization</u>. The amount of authorized capital stock of this Association shall be $1,122,000,000, divided into 112,200,000 shares of common stock of the par value of Ten Dollars ($10.00) each; but said capital stock may be increased or decreased from time to time, in accordance with the provisions of the laws of the United States.

- 2 -

2. <u>Voting Rights</u>. Each holder of common stock of the Association shall be entitled to vote on all matters, one vote for each share of common stock held by such holder. No holder of shares of the capital stock of any class of this Association shall have any pre-emptive or preferential right of subscription to any shares of any class of stock of this Association, whether now or hereafter authorized, or to any obligations convertible into stock of this Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

3. <u>Debt Obligations</u>. The Association, at any time and from time to time, may authorize and issue debt obligations, whether or nor subordinated, without the approval of the shareholders.

### ARTICLE VI - PERPETUAL EXISTENCE

The corporate existence of this Association shall continue until terminated in accordance with the laws of the United States.

### ARTICLE VII - INDEMNIFICATION

To the extent permitted by 12 CFR 7.2014 and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder:

(a) <u>Elimination of Certain Liability of Directors</u>. A director of the Association shall not be personally liable to the Association or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Association or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(b)(1) <u>Right to Indemnification</u>. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action or inaction in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Association to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Association to provide broader indemnification rights than said law permitted the Association to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall

- 3 -

continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Association shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Association.  The right to indemnification conferred in this paragraph (b) shall be a contract right and shall include the right to be paid by the Association the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director of officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Association of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director of officer is not entitled to be indemnified under this paragraph (b) or otherwise.  The Association may, by action of its Board of Directors, provide indemnification to employees and agents of the Association with the same scope and effect as the foregoing indemnification of directors and officers.

(2)  Non-Exclusivity of Rights.  The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this paragraph (b) shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Association, by-law, agreement, vote of shareholders or disinterested directors or otherwise.

(3)  Insurance.  The Association may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Association or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Association would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

## ARTICLE VIII - AMENDMENT

These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of holders of such greater amount.

EXHIBIT F TO NOTICE OF REMOVAL
PAGE 62